No.——

First Circuit

---

## CONSOLIDATED CO. v. GERACE, ET AL.

---

(January 5, 1928. Opinion and Decree.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Fraudulent Conveyances—Par. 92, 94.**

The creditor is not estopped from claiming the sale of the debtor's property simulated because of the creditor's receiving a very small part of the fund collected by the debtor, although, not informed that the property had been sold.

2. **Louisiana Digest—Marriage—Par. 158, 159.**

Under Civil Code, Article 2402, a title to the wife is on its face an acquisition of community property and cannot be made separate property of the wife by her testimony, uncorroborated, that she borrowed the money from her father to buy it, where the circumstances show it to be an acquisition of the community.

3. **Louisiana Digest—Fraudulent Conveyances—Par. 25, 29, 34.**

A sale in which an interest in property was purchased but only part of it paid for nine months after from the sale of the crop, will be considered a simula-

tion and fraud upon the creditor of the seller.

4. **Louisiana Digest—Fraudulent Conveyances—Par. 25, 29, 43.**

A sale of an interest in a plantation which, although the purchase price was handed to the notary public who paid it to the seller, was in view of surrounding circumstances and family relations between the buyer and the seller, fraudulently made, for the purpose of defeating the right of the creditor of the seller is a simulated sale.

Appeal from the District Court, Parish of St. Landry. Hon. B. H. Pavy, Judge.

Action by Consolidated Companies, Inc., against Joseph A. Gerace, et als.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Dubuisson, Perrault & Burleigh, of Opelousas, attorneys for plaintiff, appellee.

R. Lee Garland and Robert Harry, of Opelousas, attorneys for defendants, appellants.

ELLIOTT, J. Consolidated Companies, Inc., sued Joseph A. Gerace, et als., for $770.06, balance due on an open account. It subsequently filed an amended and supplemental petition in connection with its suit, in which it sought to attach and sequester one-third of the proceeds of the cane crop which had been grown by J. A. Gerace on the plantation hereinafter mentioned, during the year 1925, making Songy Sugar Company, Inc., garnishee, but its effort came to nothing.

The plaintiff then filed a second amended and supplemental petition against J. A. Gerace, Mrs. Angelino Gerace, his wife, and Sam and Tony Gerace, attacking as a simulation the sale of his one-third interest in the crop for the year 1925 and a like

interest in the mules and farming tools used on the plantation they operated. It also attacked in the same way the sale from Angelino Gerace, wife of J. A. Gerace, to Sam and Tony Gerace of one-third interest in a certain plantation acquired by defendants from E. G. Richard. The act from Angelino Gerace bears date October 19, 1925. The act whereby J. A. Gerace claims to have sold his interest in the growing crop and mules and farming implements and tools to Sam and Tony Gerace, bears date May 29, 1925.

The plaintiff alleges that these acts are fictitious and simulated; that they are each feigned sales, the purpose and object of which was to conceal the property of J. A. Gerace from his creditors, and to thereby defeat his obligations under the law. That being a creditor of J. A. Gerace, said sales operated to its injury and prejudice.

Plaintiff alleges in the alternative and in case it is found that said sales are not simulations, that both are then and in that event, each and collectively, acts done in fraud of creditors and with the intent of defrauding petitioner and depriving it of its legal rights on the property of J. A. Gerace.

That J. A. Gerace has no property except that pretendedly sold, and said acts, unless set aside, render J. A. Gerace insolvent and leave him without any means to pay the amount of his indebtedness to petitioner. That the amount due by J. A. Gerace is a debt of the community which exists between J. A. Gerace and Angelino Gerace, and that one-third interest acquired in the plantation in the name of Mrs. Angelino Gerace was in truth and in fact an acquisition and asset of the community of acquets and gains which exists between J. A. Gerace and Angelino Gerace, and belongs

thereto. That said interest is therefore responsible for the amount due petitioner.

J. A. Gerace did not answer plaintiff's demands, so a judgment by default was entered up and confirmed against him, but Angelino Gerace, and Sam and Tony Gerace appeared, and for answer denied plaintiff's averments. They alleged that the one-third interest in the plantation bought in the name of Angelino Gerace was a separate and paraphernal acquisition and asset by her acquired, and not an asset of the community with J. A. Gerace. That said acts of May 29, 1925, and of October 19, 1925, are both real bona fide acts of sale made for cash and valid in law; that the price named in each was truly and actually paid. That plaintiff received part of the price which J. A. Gerace obtained from his sale of his interest in the growing crop and in the mules and farming tools on the plantation, and is therefore estopped from attacking the character and reality of the sale.

J. A. Gerace testified on that question that part of the proceeds which he received from his brothers for his interest in the growing crop and in the mules and implements on the plantation, were applied by him to the payment of the debt to the plaintiff, but the evidence shows that he did not at that time so inform the plaintiff. The payments on account are shown to have been small and made at different times. There was one for $120.00 in amount and several for $100.00, all, some months after the sale in question. He did not inform plaintiff that he had sold his share of the crop until after his store had been closed, which was not until about the last of November or the first of December. The manager of plaintiff testified that he was not aware that J. A. Gerace had sold his interest in the crop of 1925 and in the mules and implements on the plantation

until some time in December, and that soon afterwards this suit was filed. The suit was filed on December 15, 1925; the last payment on account, $4.00, was made November 19, 1925. The plea of estoppel is not good.

The title from E. G. Richard shows that one-third interest in the plantation was acquired in the name of Mrs. Angelino Gerace. The act reads:

"With full guarantee of title to Mrs. Angelino Mestratto, wife of Joseph Gerace, who hereby authorized his said wife to do all things necessary in the purchase of the herein described property."

J. A. Gerace and Angelino Gerace testify that they were married in 1913; that Saro Mastretto, father of Angelino Gerace, gave her $400.00 cash about the time or soon after their marriage, and that her one-third of the $1200.00 cash payment, made at the time the plantation was bought, was paid for by her with this money given her by her father. Saro Mestratto testified that he gave Angelino $400.00 on or about the time she was married. Direct proof that this $400.00 was not given could not be expected, therefore before the testimony of Angelino Gerace, and that of her husband and father is accepted to prove this gift and the separate and paraphernal investment, it is well to consider the dependability of their testimony in connection with attending and subsequent but connected and related facts and circumstances.

The plantation was bought in 1917 and the price was $12,500.00, of which amount $1200.00 was paid in cash. The credit part of this price was represented by ten notes of $1130.00 each, payable in one, two, three, four, five, six, seven, eight, nine and ten years from date. Angelino claims to have paid one-third of each of these notes. At the time this suit was filed the last two of the notes had not matured, but the

evidence shows that all of the notes were paid and taken up by 1921 or 1922, and the plantation fully paid for.

Angelino Gerace testified that she borrowed $2600.00 from her father at different times to help complete paying her share of the notes, and that with the money borrowed from her father added to her share of the plantation revenues, her share of the credit price was paid. This $400.00 claimed to have been received by her as a gift from her father was never deposited in a bank, but according to her testimony she kept it at home in a trunk. It was about four years, according to her testimony, before it was needed and used in making the first payment on the plantation. Her father had six children, and lived in the Parish of Avoyelles. According to her testimony and that of her father, she went by herself, from where she lived, in the Parish of St. Landry, to where he lived in the Parish of Avoyelles and borrowed from him the money that she needed in order to meet and pay her share of the notes. No receipts or notes were given for the amount borrowed. The amounts borrowed were not deposited in any bank. Her father also claims to have kept his money at home and not in banks. At the time the money was loaned, no time appears to have been fixed for its return, but her reason for selling her interest in the plantation when she did, was, that her father had called on her to return the $2600.00 she had borrowed. She sold her interest in the plantation, which cost her $4000.00, to Sam and Tony Gerace, her two brothers-in-law, for $3000.00 in cash, in order to repay the amount her father had loaned her for the purpose of enabling her to buy it.

According to Sam and Tony Gerace the $3000.00 with which they paid her for her interest in the plantation was also kept by them at home in trunks. That as they

were about to start from the residence of Joseph A. Gerace on their way to Opelousas for the purpose of having the act of sale passed, Sam handed Tony $1500.00, which Tony placed with a like sum which he had in his coat pocket, and when they got to Opelousas and the act of sale had been passed, Tony handed the $3000.00 to the notary public who passed the act. The notary, after counting it in the presence of the witnesses, handed it to Angelino. She did not deposit it in any bank, but took it home with her, and a few days afterwards she took $2600.00 of the amount and went by herself to her father's residence in the Parish of Avoyelles and repaid him the amount she had borrowed. Her father, after receing it from her, kept it at home and did not deposit it in any bank.

Now, we know that some people do, even in this day and time, when banks are within the reach of everybody, keep important sums of money at home, or on or about their places, but as a rule if it becomes a matter of inquiry whether such parties really had the money corroborating facts and circumstances come to light in support of the fact. But Joseph, Sam and Tony Gerace had, before this time, dealt in a business way with three different banks and nothing indicates any reason on their part for mistrust in them.

Under the law, C. C. Art. 2402, the title from E. G. Richard to defendants as to said one-third interest acquired by Angelino Gerace, is on its face, an acquisition of the legal community of acquets and gains which existed between her and J. A. Gerace and an asset of the same.

The testimony relied on by J. A. Gerace and his wife to establish that said interest was acquired by Angelino with her separate and paraphernal funds and for her separate and paraphernal use and benefit, has not convinced us that it was acquired otherwise than by the reciprocal industry and labor of J. A. Gerace and Angelino Gerace. The act whereby it was acquired, should, in our opinion, have legal effect, as it was written. The conclusion of the district judge on this subject, is in our opinion, correct.

The next question is whether Sam and Tony Gerace paid J. A. Gerace $2500.00 for his one-third interest in the plantation, crop, mules and implements, as claimed by them in the act of May 29, 1925, before H. S. Joseph, Notary Public. After they had all testified that the amount had been paid to J. A. Gerace soon after the transaction, the plaintiff showed how in a devious and round about way the said Sam and Tony, acting through a man named Ruffino and another man named Napoli, paid to J. A. Gerace $667 from the proceeds of this crop nearly nine months after the sale had been made. This showing indicates that no dependence can be placed on their testimony. We are satisfied, as was the district judge, that the sale was a sham and simulation.

The act before E. P. Dunbar, Notary Public, dated October 19, 1925, whereby Angelino Gerace purports to have sold to Sam and Tony Gerace, one-third interest in the plantation, is also in our opinion, a pure simulation. To our minds the facts and circumstances attending the transaction indicate as much, and the witnesses have not inspired us with any confidence in their statements. Tony Gerace produced and handed $3000.00 to the notary public, and the notary counted it in the presence of the witnesses and then handed it to Angelino Gerace, who ostensibly received it and took it away, but as far as concerns J. A. Gerace, Angelino, Sam and Tony Ger-

ace, we are satisfied that this formality was feigned and amounted in law to nothing.

A sale cannot be made without serious intent on the part of the purchaser to buy, and of the seller to sell. The necessary intent did not in our opinion, exist in this instance, on the part of any of the parties acting as buyers, and seller, in the execution of said act.

We concur in the conclusion of the district judge as to same.

The judgment appealed from is correct.